NATIONAL ASSOCIATION OF REGU-
LATORY UTILITY COMMISSION-
ERS, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Virginia State Corporation Commission,
et al., Intervenors.

Nos. 86–1678, 86–1713, 86–1736,
87–1023 and 87–1043.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 25, 1989.

Decided July 7, 1989.

Ellen S. LeVine, with whom Janice E. Kerr, J. Calvin Simpson, San Francisco, Cal. (for State of Cal. and the Public Utilities Com'n of the State of Cal.), Frank J. Kelley, Detroit, Mich., Louis J. Caruso, Don L. Keskey, Henry J. Boynton, Lansing, Mich. (for State of Mich. and the Mich. Public Service Com'n), Steven M. Schur, Robert J. Mussallem, Madison, Wis. (for the Public Service Com'n of Wis.), David M. Barasch, Harrisburg, Pa., Daniel Clearfield (for Nat. Ass'n of State Utility Consumer Advocates, et al.), Paul Rodgers, and Charles D. Gray, Washington, D.C. (for Nat. Ass'n of Regulatory Utility Com'rs) were on the joint brief, for petitioners.

John E. Ingle, Deputy Associate Gen. Counsel, Federal Communications Com'n ("FCC"), with whom Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and Linda L. Oliver, Counsel, Washington, D.C., FCC, were on the brief, for respondents.

David W. Carpenter, with whom Mark C. Rosenblum, David J. Lewis (for AT & T), J. Roger Wollenberg, William T. Lake, Washington, D.C., and Kevin H. Cassidy, Purchase, N.Y. (for IBM), were on the brief, for intervenors AT & T and IBM. Jonathan S. Hoak, entered an appearance for intervenor AT & T in Nos. 86–1713, 86–1736, and 87–1043.

Ann Henkener, Columbus, Ohio, (for Public Utilities Com'n of Ohio), Ivy Lincoln (for Arkansas Public Service Com'n), Joel Shifman, Charleston, W.Va., Mitch Tannenbaum, Peter Ballou, Augusta, Me. (for Me. Public Utilities Com'n), Gregory J. Krasovsky (for Fla. Public Service Com'n), Mary L. Vanderpan (for Public Utility Com'n of S.D.), Howard C. Davenport, and Mary J. Sisak (for Public Service Com'n of the District of Columbia), were on the joint opening brief for intervenors. Robert S. Tongren entered an appearance for Public Utilities Com'n of Ohio. Joseph G. Donahue, Augusta, Me., entered an appearance for Me. Public Utilities Com'n.

Dana A. Rasmussen and Robert B. McKenna, Denver, Colo., were on the brief for intervenors The Mountain States Telephone & Telegraph Co., Northwestern Bell Telephone Co., and Pacific Northwest Bell Telephone Co.

Albert H. Kramer and Denise Bonn, Washington, D.C., were on the brief for intervenor North American Telecommunications Ass'n.

Alfred W. Whittaker, Richmond, Va., Floyd S. Keene, Milwaukee, Wis. (for Ameritech Operating Companies), Saul Fisher, Bedminster, N.J., and Martin J. Silverman (for NYNEX Telephone Companies) were on the brief for intervenors NYNEX and Ameritech.

James P. Tuthill, Margaret deB. Brown, San Francisco, Cal., and Stanley J. Moore, were on the brief for intervenors Pacific Bell and Nevada Bell. Robert L. Barada and Susan E. Barisone, Santa Cruz, Cal., also entered appearances for Pacific Bell and Nevada Bell in Nos. 86–1678 and 86–1736.

Genevieve Morelli and Lisa M. Zaina, entered appearances for petitioner Nat. Ass'n of Regulatory Utility Com'rs in No. 86–1678. Charles S. Fax, Washington, D.C., entered an appearance for petitioners Nat. Ass'n of State Utility Consumer Advocates, et al., in No. 86–1713. James T. Quinn, entered an appearance for petitioners People of the State of Cal. and the Public Utilities Com'n of the State of Cal. in No. 86–1736. Ronald D. Eastman, Washington, D.C., and Lynda S. Mounts, entered appearances for petitioners State of Mich. and the Mich. Public Service Com'n in No. 87–1023.

Catherine G. O'Sullivan and Andrea Limmer, Dept. of Justice, Washington, D.C., entered appearances for respondent U.S. Jane E. Mago, FCC, entered an appearance for respondent FCC.

William C. Sullivan, Linda S. Legg, St. Louis, Mo., Gary L. Buckwalter, Houston, Tex., and Liam S. Coonan, St. Louis, Mo., entered appearances for intervenor Southwestern Bell Telephone Co.

Lawrence W. Katz and Robert A. Levetown, Washington, D.C., entered appearances for intervenor Bell Atlantic Telephone Co.

R. Frost Branon, Jr., Atlanta, Ga., entered an appearance for intervenor Bell-South Operating Co., et al.

James S. Blaszak and Charles C. Hunter, entered appearances for intervenor Ad Hoc Telecommunications Users Committee.

Saul Fisher, Bedminster, N.J., and Amy S. Gross, Stamford, Conn., entered appearances for intervenor New York Telephone Co., et al.

William Malone, Richard McKenna, and James R. Hobson, entered appearances for intervenor GTE Service Corp. in Nos. 86-1678, 86-1713, 86-1736, and 87-1023.

David Cosson, Washington, D.C., and Paul G. Daniel, Wilmington, Del., entered appearances for intervenor Nat. Telephone Cooperative Ass'n in Nos. 86-1713, 86-1736, 87-1023, and 87-1043.

Herbert E. Marks and James L. Casserly, Washington, D.C., entered appearances for intervenor Independent Data Communications Mfrs. Ass'n in Nos. 86-1713, 86-1736, 87-1023, and 87-1043.

Charles M. Meehan and Shirley S. Fujimoto, Washington, D.C., entered appearances for intervenor Utilities Telecommunications Council in Nos. 86-1678, 86-1713, and 86-1736.

Brian R. Moir, entered an appearance for intervenor International Communications Ass'n in Nos. 86-1678, 86-1713, and 86-1736.

Charles D. Gray, Washington, D.C., entered an appearance for intervenor Nat. Ass'n of Regulatory Utility Com'rs in Nos. 86-1713 and 86-1736.

John C. Wohlstetter, entered an appearance for intervenor Contel Corp. in Nos. 86-1736 and 87-1023.

Robert M. Hill, Jr., Florence, Ala., entered an appearance for intervenor Ala. Public Service Com'n in Nos. 86-1736 and 87-1023.

J. Calvin Simpson, San Francisco, Cal., James T. Quinn, Janice E. Kerr, San Francisco, Cal., and Ellen S. Levine, entered appearances for intervenor People of the State of Cal. in Nos. 86-1713 and 87-1043.

Martin McCue, entered an appearance for intervenor U.S. Telephone Ass'n in No. 86-1678.

Lewis S. Minter, Richmond, Va., entered an appearance for intervenor Va. State Corporation Com'n in No. 86-1678.

Ana Colon Aebi, entered an appearance for intervenor Public Service Com'n of Nev. in No. 86-1678.

Larry V. Rogers, entered an appearance for intervenor Wash. Utilities and Trans. Com'n in No. 86-1678.

Robert S. Golden, Jr., Hartford, Conn., entered an appearance for intervenor Dept. of public Utility Control of the State of Conn. in No. 86-1678.

Sammy R. Kirby, Raleigh, N.C., entered an appearance for intervenor N.C. Utilities Com'n in No. 86-1678.

Henry Walker, entered an appearance for intervenor Tenn. Public Service Com'n in No. 86-1678.

William C. Black, Augusta, Me., entered an appearance for intervenor Me. Public Advocate in No. 86-1678.

David L. Stott and Laurie L. Noda, Salt Lake City, Utah, entered appearances for intervenor Utah Public Service Com'n in No. 86-1678.

Elisabeth H. Ross, Washington, D.C., entered an appearance for intervenor Mo. Public Service Com'n in No. 86-1678.

Weldon S. Caldbeck, entered an appearance for intervenor Public Service Com'n of Wyoming in No. 86-1678.

Louis J. Caruso, Don L. Keskey, Henry J. Boynton, Lansing, Mich., and Frank J. Kelley, Detroit, Mich., entered appearances for intervenor State of Mich. and the Mich. Public Service Com'n in No. 86-1678.

Before ROBINSON, MIKVA, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Petitioners challenge Federal Communications Commission orders preempting the authority of state utility commissioners to

regulate the installation and maintenance of a certain category of wiring used for both interstate and intrastate telephone communication. We conclude that the Commission may only preempt state regulation over intrastate wire communication to the degree necessary to keep such regulation from negating the Commission's exercise of its lawful authority over interstate communication service. Accordingly, we grant the petition for review and remand to the Commission for further proceedings.

## I. BACKGROUND

### A. Statutory Scheme

The Communications Act of 1934 ("Act") creates the Federal Communications Commission ("FCC" or "Commission")

> [f]or the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all people of the United States a rapid, efficient, Nationwide, and world-wide wire and radio communication service....

47 U.S.C. § 151 (1982). To accomplish this goal, the Act divides the regulatory jurisdiction over wire and radio communication into distinct interstate and intrastate spheres.

Thus, while the Act grants the FCC jurisdiction over "all interstate and foreign communication by wire or radio ...," *id.* § 152(a), it expressly limits the FCC's jurisdiction by reserving certain matters to the states:

> [N]othing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier....

*Id.* § 152(b) ("section 152(b)"). "Wire communication" or "communication by wire" is defined as "the transmission of ... sounds of all kinds by aid of wire, cable, or other like connection ... including all instrumentalities, facilities, apparatus, and services

... incidental to such transmission." *Id.* § 153(a).

The Act also establishes a "jurisdictional separations" process to determine what portion of an asset is employed to produce or deliver interstate as opposed to intrastate service. *Id.* § 410(c). Once that determination is made, the costs can be allocated to a telephone company's intrastate and interstate services for regulatory purposes.

### B. Factual and Procedural Background

This case involves Commission orders preempting state authority over the installation and maintenance of "inside wiring" that is used for both interstate and intrastate telephone communication. The term "inside wiring" generally refers to the telephone wires within a customer's home or place of business that are on the customer's side of the point of intersection between the telephone company's communications facilities and the customer's facilities. In this opinion, we will use the term to refer to the subject matter of the orders under review, namely, the installation of "simple" inside wiring (i.e., the on-premise wiring connecting residential and single-line business customers to the telephone network) and the maintenance of all inside wiring.

Originally, all wiring from the telephone company's central switching facilities to the customer's telephone ("customer premises equipment" or "CPE") was owned, installed, and maintained by the company and was subject to government regulation. Because telephone communication was subject to dual state and federal regulation, the cost of "jointly used" wiring (i.e., wiring used for both interstate and intrastate communication) was allocated between the two kinds of uses for ratemaking purposes through the statutory jurisdictional separations process.

In 1977, the FCC adopted "[t]he principle that the causative rate payer [i.e., the customer] should bear the full burden of the costs" of connecting CPE to the telephone network, including the cost of inside wiring. *American Telephone & Telegraph*

*Co.* (Docket No. 19129) Phase II, 64 F.C. C.2d 1, 55, para. 137 (1977). The FCC has sought to achieve this goal in two related ways: the first involves the accounting treatment of inside wiring costs; the second, the "detariffing" or deregulation of wire installation and maintenance. Although only the latter is at issue in this case, a discussion of the first serves as a useful introduction to the questions we are asked to resolve.

Until 1981, telephone companies would capitalize the costs of new inside wiring and then recover them over a number of years through depreciation charges. In that year, however, the FCC ordered telephone companies to expense those costs and recover them from their customers in the year incurred. *Amendment of Part 31, Uniform System of Accounts for Class A and Class B Telephone Cos.* (CC Docket No. 79–105), 85 F.C.C.2d 818 (1981) (*"Expensing Order"*), recon., 89 F.C.C.2d 1094 (1982), *further recon.*, 92 F.C.C.2d 864 (1983). At the same time, the Commission concluded that the objective of requiring customers to absorb the costs generated by them could not be fully realized solely through changes in federal accounting requirements because of the dual state-federal jurisdiction over jointly used inside wiring. *Expensing Order*, 85 F.C.C.2d at 826–28, paras. 28–32.

Two years later, the FCC decided that full cost recovery, and the Commission's ultimate goal of a deregulated, competitive market for inside wiring, could only be achieved by preempting the states' authority to require the use of different accounting and depreciation procedures for intrastate ratemaking purposes. 92 F.C.C.2d at 877–80, paras. 37–38, 44–45. In *Louisiana Public Service Comm'n v. FCC* (*"Louisiana PSC"*), however, the Supreme Court overturned the FCC's preemption order, holding that section 152(b) "denies the FCC the power to pre-empt state regulation of depreciation for intrastate ratemaking purposes." 476 U.S. 355, 357, 106 S.Ct. 1890, 1893, 90 L.Ed.2d 369 (1986).

In the meantime, the FCC moved towards its second objective, the deregulation

of the inside wiring market that is at issue here, by directing that the installation and maintenance of inside wiring be detariffed, effective January 1, 1987. *Detariffing the Installation and Maintenance of Inside Wiring* (CC Docket No. 79–105), 51 Fed. Reg. 8498 (1986), *reprinted in full* at 59 RR 2d 1143 (1986). According to the FCC, detariffing would not only ensure that costs were recovered from the causative ratepayer but, by stimulating competition and new entry into the inside wiring market, would lead to savings for customers. 59 RR 2d at 1143–44, para. 2. In response to concerns that had been expressed by some states, the Commission found that deregulation (which would relieve telephone companies of their existing obligation to install and maintain inside wiring) would not result in the unavailability of such services even in rural areas because of "persuasive" evidence of the development of competition in the inside wiring marketplace and the availability of "do-it-yourself" kits. *Id.* at 1151–52, paras. 30–31. Accordingly, the FCC gave preemptive effect to its detariffing order. *Id.* at 1158, para. 55.

On reconsideration, the FCC affirmed its decision to preempt. *Memorandum Opinion and Order*, 1 F.C.C. Rcd 1190 (1986) (*"Recon. Order"*). The FCC supported its preemption decision on two distinct grounds. First, addressing the applicability of *Louisiana PSC*, the Commission held that section 152(b) only denies the FCC jurisdiction over intrastate *common carrier* communication services. *Id.* at 1192, paras. 14–15. Having done so, the FCC declared that as the installation and maintenance of inside wiring would no longer be classified as common carrier services, section 152(b) did not pose a jurisdictional bar to the FCC's preemption of state regulation. *Id.*, para. 16.

Second, the FCC held that even if section 152(b) were applicable, inside wiring could not be severed to permit dual federal and state regulation of the provision of these services. Because inside wiring is used jointly for interstate and intrastate communications, the FCC concluded that a federal program of competitive, deregulated inside

wiring cannot coexist with a regulated state system unless consumers are required to purchase two sets of inside wiring, one for interstate and the other for intrastate use. To prevent such a result, the FCC found it necessary to preempt state regulation. *Id.* at 1193, para. 18 & nn. 43–46 (citation omitted).

The FCC denied requests for a stay of the preemptive effect of its detariffing order. *Memorandum Opinion and Order,* 2 F.C.C. Rcd 349 (1986). In so doing, the FCC made clear that, contrary to the assumption of those parties seeking the stay, its preemption order had not forbidden the states from imputing the costs and revenues from the telephone companies' detariffed inside wiring services into the rates for other intrastate services that remained subject to state tariff regulation. *Id.* at 350, para. 6.

On further reconsideration, the FCC (1) reaffirmed that inside wiring should not be regulated as a common carrier service, (2) rejected the argument that section 152(b) reserves jurisdiction to the states over non-common carrier activities that are provided "for or in connection with" intrastate common carrier activities, and (3) reiterated that its decision to preempt was independently justified by the inseverability of jointly used inside wiring. *Memorandum Opinion and Order,* 3 F.C.C. Rcd 1719 (1988) (*"Further Recon. Order "*). A number of state utility commissions and related associations petitioned for review ("the states"), and several parties have intervened.

## II. DISCUSSION

### A. Petitioners' Challenges

Petitioners and petitioner-intervenors argue that *Louisiana PSC* controls this case and urge us to reject the FCC's attempts to distinguish it. First, the states contend that the FCC's interpretation of section 152(b) as only applying to intrastate common carrier services is inconsistent with the plain language of the statute. Indeed, they maintain that inside wiring installation and maintenance, which are integral to telephone communication, clearly fall within the ambit of the statute as a "facility" and a "service," respectively, provided "in connection with intrastate communication service by wire." The states further assert that even if the FCC properly interpreted section 152(b), it incorrectly reclassified the installation and maintenance of inside wiring as non-common carriage.

Second, the states criticize the Commission's "inseverability" argument. They argue that dual federal-state regulation would not lead to a requirement that a customer have two sets of inside wiring because the necessary separation can be accomplished financially pursuant to the statutory jurisdictional separations process. The states explain that once the costs are apportioned between intrastate and interstate jurisdictions, the states are fully able to tariff the intrastate portion even though the FCC has chosen to detariff the interstate portion. Just as the costs of inside wiring are severable for accounting purposes, *Louisiana PSC,* 476 U.S. at 375, 106 S.Ct. at 1902, so are they severable for ratemaking purposes.

While we agree with the states that *Louisiana PSC* controls this case, we do not believe it compels a wholesale rejection of the FCC's preemption decision. In the following sections, we set out the principles governing the interpretation of section 152(b) and discuss the validity of the Commission's preemption order in this case.

### B. Applicable Law

■ "The critical question in any preemption analysis is always whether Congress intended that federal regulation supersede state law." *Louisiana PSC,* 476 U.S. at 369, 106 S.Ct. at 1899 (citation omitted). A federal agency acting within its statutory authority may preempt inconsistent or conflicting state actions so long as it has reasonably accommodated conflicting policies that were committed to *its* care, "unless it appears from the statute or its

legislative history that the accommodation is not one that Congress would have sanctioned." *City of New York v. FCC*, 486 U.S. 57, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988) (quoting *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)). An agency may not act at all, let alone preempt state authority, in an area where Congress has explicitly denied it jurisdiction. *Louisiana PSC*, 476 U.S. at 374, 106 S.Ct. at 1901.

■ The issue here is whether section 152(b) denies the FCC the power to preempt state regulation of inside wiring. *Louisiana PSC* establishes the governing principles for interpreting section 152(b). There the Court made clear that the Act, through section 152(b), establishes a system by which the states exercise the same authority over intrastate wire communication as the FCC exercises over interstate wire communication:

> By its terms, this provision fences off from FCC reach or regulation intrastate matters—indeed, *including matters "in connection with" intrastate service.* Moreover, the language with which it does so is certainly as sweeping as the wording of the provision [section 151] declaring the purpose of the Act and the role of the FCC.... We agree with petitioners that ... sections [151 and 152(b)] are naturally reconciled ... to enact a *dual* regulatory system....

476 U.S. at 370, 106 S.Ct. at 1899 (first emphasis added, second in original).

This passage and the language of section 152(b) compel us to reject the FCC's attempt to limit the reach of section 152(b) to "intrastate common carrier communication services." *Recon. Order*, 1 F.C.C. Rcd at 1192, paras. 14–15. As the Court has made clear, section 152(b) "not only imposes jurisdictional limits on the power of a federal agency, but also by stating that nothing in the Act shall be construed to extend FCC jurisdiction to intrastate service, provides its own rule of statutory construction." *Louisiana PSC*, 476 U.S. at 376–77 n. 5, 106 S.Ct. at 1902–03 n. 5. Indeed, even if

the statute could be interpreted to read "intrastate *common carrier* communication service," inside wiring would still fall within it as a facility or service offered "for or in connection with" a common carrier communication service, namely, intrastate telephone service. Either way, we cannot countenance the Commission's attempt to rewrite the statute. *See id.* at 376, 106 S.Ct. at 1902.

■ We also reject the FCC's broad position that whenever facilities are physically inseparable, the Commission may preempt state regulation of those facilities. In *Louisiana PSC*, the Court rejected the "intimation" that it was inappropriate to apply different depreciation rates to the same property. *Id.* at 375, 106 S.Ct. at 1902. The Court pointed out that Congress had established the jurisdictional separations process, under 47 U.S.C. § 410(c), to deal with jurisdictional tensions arising from the use of a single system to provide both interstate and intrastate service:

> Because the separations process literally separates costs such as taxes and operating expenses between interstate and intrastate service, it facilitates the creation or recognition of distinct spheres of regulation.... [I]t is certainly possible to apply different rates and methods of depreciation to plant once the correct allocation between interstate and intrastate use has been made.

*Id.* (citations and footnote omitted).

■ The FCC argues, however, that because it has preemptively detariffed inside wiring installation and maintenance, the costs of those services are no longer subject to jurisdictional separation, and thus the process relied upon by the Court in *Louisiana PSC* is inapplicable. Brief for Respondent at 57 & n. 48, *citing Separation of Costs of Regulated Telephone Service from Costs of Non-regulated Activities* (CC Docket No. 86–111), 2 F.C.C. Rcd 1298, 1310 n. 181 (*"Joint Cost Order"*) ("According nonregulated accounting treatment to an activity results in the exclusion

of costs of that activity from the jurisdictional separations process."). The Commission claims that because the separations process is inapplicable and inside wiring is inseverable, all state regulation must be preempted.

We reject this argument. In the *Joint Cost Order,* and in its brief, the FCC concedes that an activity deregulated only at the federal level may still be subject to the jurisdictional separations process. 2 F.C.C. Rcd at 1308–09, para. 79. For example, while the Commission deregulated interstate billing and collecting activities, it did not preempt intrastate regulation of these activities. Accordingly, billings and collections remain subject to state regulation and the jurisdictional separations process. *Id.* at 1309, paras. 80–81. Thus, the Commission's claim that the separations process is inapplicable to inside wiring is predicated on the preemptive effect of the Commission's orders.

The circularity of the FCC's argument is readily apparent: state authority over inside wiring must be preempted as the costs of the wiring are not severable; they are not severable because they are no longer subject to the jurisdictional separations process; but the costs are not subject to the separations process because inside wiring has been preemptively deregulated. Were we to accept this argument, the Commission would have unchecked authority to force state deregulation of any activity it chose to deregulate at the interstate level.

Nevertheless, there are circumstances where state authority must yield to national imperatives. "Where [the] FCC acted within its authority ..., pre-emption of inconsistent state regulation ... [will be] upheld *since state regulation would negate the federal tariff.*" *Louisiana PSC,* 476 U.S. at 375–76 n. 4, 106 S.Ct. at 1902 n. 4 (emphasis added), *citing North Carolina Utilities Comm'n v. FCC,* 537 F.2d 787 (4th Cir.), *cert. denied,* 429 U.S. 1027, 97 S.Ct. 651, 50 L.Ed.2d 631 (1976) (*"NCUC I"*) and *North Carolina Utilities Comm'n v. FCC,* 552 F.2d 1036 (4th Cir.), *cert. de-*

*nied,* 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977) (*"NCUC II"*).

In the *NCUC* cases, the Fourth Circuit upheld the FCC's preemption of state regulations that proscribed the physical interconnection of non-carrier-provided customer premises equipment with the intrastate telephone network by requiring that such equipment be used only in connection with interstate service. The court recognized that as CPE is used jointly for intrastate and interstate communication, a requirement that its use be limited to one or the other was a "practical and economic impossibility." If the states could prohibit interconnection unless the CPE were used solely for interstate communication, "federal tariffs authorizing interconnection [of non-carrier-provided CPE] would be made nugatory." *NCUC II,* 552 F.2d at 1043. Preemption of the inconsistent state regulation was therefore lawful. *Id.*

■ In sum, the *only* limit that the Supreme Court has recognized on a state's authority over intrastate telephone service occurs when the state's exercise of that authority negates the exercise by the FCC of its own lawful authority over interstate communication. Thus, the FCC may not use its preemptive powers in a manner that would negate the lawful exercise of state authority over intrastate service, as *Louisiana PSC* illustrates.

## C. Validity of the FCC's Preemption in this Case

■ The FCC seeks, through the orders under review, to encourage competition in the provision, installation, and maintenance of inside wiring. We agree with the FCC that this policy is consistent with the goals of the Act, *see* 47 U.S.C. § 151, and that it has the authority to implement this policy with respect to interstate communication. *United States v. Southwestern Cable Co.,* 392 U.S. 157, 178, 88 S.Ct. 1994, 2005, 20 L.Ed.2d 1001 (1968) (Commission may take actions "reasonably ancillary to effective performance" of its responsibilities for reg-

ulation of interstate communication); *see also Computer Communications Industry Ass'n v. FCC,* 693 F.2d 198, 213 (D.C. Cir.1982) (*"CCIA "*), *cert. denied sub nom. Louisiana Pub. Serv. Comm'n v. FCC,* 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983). The question that remains, however, is whether it is necessary for the FCC to preempt state regulation in order to achieve this objective.

The FCC claims that if the states are permitted to exercise *any* regulatory authority over the installation and maintenance of inside wiring, its goal of a free and competitive market in those services will be frustrated:

> [A]ny state regulation of the provision of jointly used wiring would directly conflict with our requirement that charges for inside wiring installation and maintenance not be included in tariffed rates so as to ensure the competitive provision of inside wiring.

*Recon. Order,* 1 F.C.C.Rcd at 1193, para. 18 (footnote omitted). According to the FCC, state regulation would necessarily "control" the rates, terms, and conditions under which inside wiring may be offered. For example, underpricing (compared to prices that would prevail in an open market) of the intrastate portion of inside wiring by a state regulated telephone company would make it difficult for non-regulated providers to compete. On the other hand, state-mandated overpricing would provide no incentive for telephone companies to price inside wiring competitively and could encourage inefficient providers to enter the market. The Commission maintains that state tariffing would also discourage telephone companies from establishing innovative service options to respond flexibly to changes in the market. *See Further Recon. Order,* 3 F.C.C.Rcd at 1721, para. 18.

The states object that as most of them have already "unbundled" inside wiring from basic transmission services, state regulation will not interfere with the FCC's policy objectives. In such states, charges for inside wiring services are separated from charges for basic transmission service; therefore, customers are free to forego the telephone company's charges for inside wiring and to seek an alternative provider. The states also argue that certain state regulations, such as a requirement that telephone companies serve as the inside wiring provider of last resort, would not lead to the frustration of a free and competitive market.

Based on the record before us, it is clear that certain otherwise legitimate state actions regulating intrastate telephone service could interfere with the Commission's achievement of its valid goal of providing interstate telephone users with the benefits of a free market and free choice in the installation and maintenance of inside wiring. We conclude, therefore, that the Commission may take appropriate measures in pursuit of that goal, but *only* to the degree necessary to achieve it. To this end, even though most states have already done so, the Commission may require that all of them unbundle inside wiring from basic telephone services.

We emphasize, however, that a valid FCC preemption order must be limited to tariffing that would necessarily thwart or impede the operation of a free market in the installation and maintenance of inside wiring. For example, the Commission may properly proscribe state tariffs that would result in the subsidization of the installation and maintenance of inside wiring by the general ratepayers because it would allow telephone companies to undercut alternative providers of inside wiring services. The Commission may determine, on remand, that there are other tariff provisions that would also frustrate a free market. The FCC has the burden, however, of showing with some specificity that such provisions would negate the federal policy of establishing a competitive inside wiring market.

The states have maintained throughout that they should be able to require local telephone companies to serve as providers of last resort of installation and mainte-

nance services. They argue that in a completely deregulated market, there may be some areas that would not be adequately served by the competitive market and that "do-it-yourself" kits are not an acceptable substitute for a trained provider. While the orders under review are less than clear on this issue, FCC counsel at oral argument assured us, and the states, that the Commission's preemption decision does not prevent a state from requiring that the local telephone company act as a provider of last resort.

Both the FCC and respondent-intervenors insist that our decision in *CCIA* requires us to support the Commission's position and dismiss the petitions for review. In that case we upheld the FCC's authority to detariff and unbundle CPE from basic telephone services and to preempt state regulation of CPE. 693 F.2d 198, affirming *Amendment of Section 64.-702 of the Commission's Rules and Regulations (Second Computer Inquiry)* (Docket No. 20820, *final decision*, 77 F.C.C.2d 384, *recon.*, 84 F.C.C.2d 50 (1980), *further recon.*, 88 F.C.C.2d 512 (1981). *CCIA*, however, is clearly distinguishable from the case at hand.

In the proceedings that were at issue in *CCIA*, the FCC determined that the prior telephone company practice of bundling CPE costs into the regulated rates for basic telephone service made it difficult for other potential suppliers of such equipment to compete, and that the lack of competition resulted in distortions in the pricing of telephone company-provided CPE. *Final Decision*, 77 F.C.C.2d at 438–47. The Commission thus decided to detariff CPE and to prohibit carriers from providing the equipment as part of its basic offering of telephone service.

The FCC also preempted state regulation of CPE: "unless there were two separate phone systems with one being used wholly intrastate, unbundled cost-based pricing for a piece of equipment at the federal level necessarily precludes any other result by the states." *Id.* at 455, para. 185. We upheld the FCC's preemption decision because state regulation was incompatible with the valid and lawful federal objective of developing a free, competitive market in customer telephone equipment. *CCIA*, 693 F.2d at 214.

We hold today, as we did in *CCIA*, that the FCC may preempt inconsistent state regulation so long as it can show that the state regulation negates a valid federal policy. In this regard, the FCC may require the states to unbundle inside wiring from basic transmission services so that consumers may be able to choose from among available providers. *See id.* at 215. In order to justify preemption of any other state tariffs, however, the FCC must show that such tariffs necessarily thwart achievement of a free and competitive inside wiring market. The FCC met that burden in *CCIA;* it has not done so here.

### III. CONCLUSION

The FCC may preempt state regulation of the installation and maintenance of simple inside wiring, but only to the extent that such regulation negates the federal policy of ensuring a competitive market in such services. Accordingly, we grant the petition for review and remand to the Commission for further proceedings consistent with this opinion.

*So ordered.*